UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **VS.** | § | **CRIMINAL ACTION NO. 4:14-CR-050** |
| | § | |
| **KINDY STEVEN ROMERO-MEDRANO** | § | |

**MEMORANDUM & ORDER**

A jury found Defendant Romero-Medrano guilty of distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(B), and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). At a subsequent hearing, Defendant was sentenced to 135 months imprisonment, registration as a sex offender, and supervised release of 20 years. The issue of restitution was taken under advisement.

Two victims, identified as "Vicky" and "Sarah,"[1] have requested restitution in this case. Their counsel provided documentation of their losses and information about restitution they have received from others adjudicated guilty. The Court received briefing from the Defendant and the Government and held hearings on August 15, 2017 and October 19, 2017 regarding restitution.

**I.    LEGAL BACKGROUND**

Congress has made restitution "mandatory" for the "full amount of the victim's losses" in child pornography offenses. 18 U.S.C. § 2259(b)(4). The victim's losses include: (A) medical services relating to physical, psychiatric, or psychological care; (B) physical and occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care

---

[1] Sarah is the only victim from a multiple victim series who has submitted a restitution request. In briefs and arguments, the Government sometimes refers to Sarah by the title of that series: "Marineland." (Doc. No. 180.)

1

expenses; (D) lost income; (E) attorneys' fees, as well as other costs incurred; and (F) any other losses suffered by the victim as a proximate result of the offense. *Id*. at § 2259(3).

The Supreme Court has held that: "a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." *Paroline v. United States*, 134 S.Ct. 1710, 1727 (2014). The Supreme Court wrote that "[t]he amount would not be severe" in a case where the defendant was a possessor of child pornography images and the victim's general losses from the trade in her images were the product of the acts of thousands of offenders. *Id*. At the same time, "[i]t would not, however, be a token or nominal amount." *Id*. The amount "would be reasonable . . . in recognition of the indisputable role of the offender in the causal process underlying the victim's losses and suited to the relative size of that causal role." *Id*. The goals to be served by the restitution are "remedial or compensatory," as well as "punitive"; it is meant "to impress upon defendants that their acts are not irrelevant or victimless. *Id*. at 1726, 1729.

In *Paroline*, the Supreme Court instructed that, assessing the restitution amount "cannot be a precise mathematical inquiry," but "involves the use of discretion and sound judgment." *Id*. at 1728. The Supreme Court then provided some factors to "serve as rough guideposts," and not "a rigid formula." *Id*. It suggested, "district courts might, as a starting point, determine the amount of the victim's losses caused by the continuing traffic in the victim's images." *Id*. The restitution award could then be based on guidelines such as:

> (1) [T]he number of past criminal defendants found to have contributed to the victim's general losses; (2) reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; (3) any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); (4) whether the defendant reproduced or distributed images of the victim; (5) whether the defendant had any connection to the initial production of

the images; (6) how many images of the victim the defendant possessed; and (7) other facts relevant to the defendant's relative causal role.

*Id*. (numbering added). The economic circumstances of the defendant shall not preclude a restitution order. 18 U.S.C. § 2259(b)(4)(B).

There are two dissenting opinions from *Paroline*, and though they would reach opposite results, they both stem from allegations of lack of statutory clarity. Chief Justice Roberts and Justices Scalia and Thomas would have awarded no restitution because the statute provided no way of calculating the amount of loss the defendant caused. *Id*. at 1732-33 (Roberts, C.J., dissenting). In contrast, Justice Sotomayor would have affirmed the Fifth Circuit and ordered the district court to award the victim the full amount of her losses based on the statute's mandate of restitution for the "full amount of the victim's losses." *Id*. at 1735-39 (Sotomayor, J., dissenting).

The majority opinion recognized that the *Paroline* "approach is not without its difficulties." *Id*. at 1729. Other courts and commentators agree. *See, e.g.*, *United States v. Galan*, 804 F.3d 1287 (9th Cir. 2015) ("it cries out for a legislative solution," citations omitted); *United States v. Darbasie*, 164 F.Supp.3d 400 (E.D.N.Y. 2016) (*Paroline* was "written to command Olympic effort"); *United States v. DiLeo*, 58 F.Supp.3d 239 (E.D.N.Y. 2014) ("Bluntly, the Court finds itself among the growing throng of district courts which have expressed their concern with the lack of precise guidance from Congress and the Supreme Court in deciding restitution awards in these circumstances."); Isra Bhatty, *Navigating Paroline's Wake*, 63 UCLA L. REV. 2, 28 (2016) (critiquing *Paroline* as "confusing" and "unworkable").

Many courts appear to focus on the most readily determined *Paroline* factor: the number of past criminal defendants found to have contributed to a victim's losses. These courts divide the victim's total losses by the total number of offenders, including the present offender. *See,*

*e.g.*, *United States v. Sainz*, 827 F.3d 602, 606 (7th Cir. 2016) ("We do not read *Paroline* as requiring district courts to consider in every case every factor mentioned. The Supreme Court made clear that the *Paroline* factors were permissive, not mandatory."); *United States v. Daniel*, No. 3:07-CR-142-O, 2014 WL 5314834, at *2 (N.D. Tex. Oct. 17, 2014) (adopted in Doc. No. 128 in 3:07-cr-142-O) (including the impossibility of tracing a particular amount of losses to the defendant and of reasonably predicting the number of future offenders likely to be caught and convicted for crimes contributing to this particular victim's losses in the findings of fact); *United States v. Watkins*, 2014 WL 3966381, *7 (E.D. Cal. 2014).

Following *Paroline*, the Fifth Circuit noted that "at least some analysis must be done to determine the extent that the defendant's offense proximately caused the victims' losses." *United States v. Jimenez*, 692 Fed.Appx. 192, 202 (5th Cir. 2017). In *Jimenez*, the Fifth Circuit found the district court erred in determining a restitution award of $25,000 per victim for five victims. *Id*. The district court had not conducted any kind of analysis of the appropriateness of the victims' requested amounts, and the requests before the district court did not include a *Paroline* analysis. *Id*. Where each victim's total estimated damages were different, the Fifth Circuit considered it "unlikely" that the defendant proximately caused the same amount of loss to each victim. *Id*. at 202-03. Moreover, the Fifth Circuit "note[d] that $25,000 appears to be near the high end of restitution awards applying a *Paroline* analysis." *Id*. at 203. The Fifth Circuit includes the caveat that *Jimenez* "should not be interpreted as opining that a $25,000 per victim award (or more) could not be justified after a proper *Paroline* analysis, [as a suggestion] that matching awards for victims would never be appropriate (especially considering the discretion and estimation required as part of the *Paroline* analysis)." *Id*. at 203 n. 7.

## II. ANALYSIS

On behalf of their clients, Vicky's counsel requests $10,000 in restitution, Sarah's counsel requests $15,000 in restitution, and the Government "believes the [] requested restitution amounts are appropriate."[2] (Doc. No. 180.) Defendant argues that the Government neglected several *Paroline* factors, and that the requested restitution amounts are much larger than a proportional share of restitution based on the number of defendants who have been ordered to pay restitution, even before accounting for the defendants who will be prosecuted in the future. (Doc. No. 178.)

Determining proportional restitution in child pornography cases presents an infinite divisibility problem. First, the number of total offenders is unknown and impossible to estimate. Future offenders can continue to see images distributed on the internet and may be prosecuted. Yet, to determine a proportion, it is necessary to know how many offenders make up the whole. Second, the offenders do not each equally cause the victim's losses. An offender who possesses images is different from an offender who possesses and distributes, and an offender who created the images is different from both. Yet, § 2259 and the Supreme Court have mandated that courts undertake this task—with discretion and sound judgment. *Paroline*, 134 S.Ct. at 1727-28.

### a. Discussion of *Paroline* Factors

From the Supreme Court's recommended starting point, this Court begins by recognizing the total "amount of the victim's losses caused by the continuing traffic in the victim's images. *Id*. at 1728. Vicky and Sarah's losses are documented in letters and exhibits from their counsel. *See* Letter from Carol L. Hepburn to Sherri Lynn Zack, April 25, 2017 Re: Restitution request—

---

[2] With respect to Vicky, the Government's brief states, "Requested Amount: $30,000." (Doc. No. 180 at 13.) At the August 15 hearing, counsel for the Government agreed that this was a typographical error, and that the sections of the brief stating agreement with Vicky's counsel and arguing for $10,000 in restitution represent the Government's position.

"Marineland Series" victim ("Sarah Letter"), and attached exhibits; Letter from Carol L. Hepburn to Sherri Lynn Zack, April 25, 2017 Re: Restitution request—"Vicky Series" victim ("Vicky Letter"), and attached exhibits.  Defendant has not challenged the total loss amounts, and there does not appear to be any reason to doubt them.

Vicky's economic losses are $4,462,040.96.  Vicky Letter at 2.  This total includes disaggregated increased medical costs, future counseling expenses, educational and vocational counseling needs and part-time income during schooling, lost past and future earnings, and expenses paid in out of pocket costs incurred relative to restitution documentation.  *Id*.  Sarah's economic losses are $2,753,421.77.  Sarah Letter at 2.  This total includes psychological counseling, lost income, out of pocket costs and expenses incurred relative to restitution documentation.  *Id*.  Neither of these totals includes attorneys' fees.  *Id*.; Vicky Letter at 2.

Next, the Court examines the *Paroline* factors in turn:

**1. Number of Past Criminal Defendants Found to Have Contributed to the Victim's General Losses**

The number of restitution orders issued is commonly used as a divisor by courts.  *See, e.g.*, *DiLeo*, 58 F.Supp.3d at 245, 248 (citing other cases where "courts have embraced a simple division sort of an approach to computing restitution").  Victims' counsel receives notice of restitution orders that are entered for victims, and have provided the Court with the total for both Vicky and Sarah.  Victims' counsel also note how many defendants have actually made some payment, and the total amount of restitution that each victim has received so far.  *See, e.g.*, Vicky Letter at 2, 12.  The number of defendants who have paid is not relevant to Defendant Romero-Medrano's proportional causal role, and to rely on that number would be akin to applying joint and several liability, which *Paroline* rejected. 134 S.Ct. at 1728-29.

Vicky has received 904 prior restitution orders. Vicky Letter at 12. Sarah has received 383 prior restitution orders. Sarah Letter at 12.

The Government contends that the use of past defendants found to have contributed to the victim's losses is a "completely unworkable" factor. (Doc. No. 180 at 5.) The U.S. Attorney's Office has access only to federal data, and does not have information about state or local prosecutions, or prosecutions in other countries.[3] (Doc. No. 180 at 5.) The Government declines to provide the number of federal defendants who have been found to have contributed to either victim's losses, and argues that the number is "neither meaningful nor helpful to the Court in determining an appropriate restitution award." (Doc. No. 180 at 5.)

The Government's position is short-sighted. If the offenders collectively were to make the victim whole (economically), as a demand for proportional restitution implies, any information about how many offenders there are is useful and would help the Court find a divisor. This Court will use the number of past restitution orders for a particular victim as a proxy for the number of past criminal defendants.

2. **Reasonable Predictions on the Number of Future Offenders Likely to Be Caught and Convicted**

It would be irresponsible to guess at the total number of offenders who will be prosecuted in the future. *See DiLeo*, 58 F.Supp.3d at 245 ("it is hard to fathom how, at any given point in time, such estimates and predictions could be more than a wild guess"); *United States v. Watkins*, No. 2:13-CR-00268 LKK AC, 2014 WL 3966381, at *7 (E.D. Cal. Aug. 13, 2014), *report and recommendation adopted*, No. 2:13-CR-00268-MCE-AC, 2014 WL 5697712 (E.D. Cal. Oct. 30,

---

[3] Sadly, there are likely offenders in other countries. The images are shared over the internet without recognition of geographic boundaries, and a print-out of comments to an online image of Vicky even references the popularity of the videos of her in the Philippines. Ex. 9 to Vicky Letter.

2014) (to double the number of known offenders or otherwise increase the divisor to account for future offenders would be arbitrary, "impermissible," and "near triviality"). Accordingly, rather than assign a numerical value to the number of future offenders who will be caught and convicted, this Court simply assumes that there will be some future offenders.

3. **Available and Reasonably Reliable Estimate of the Broader Number of Offenders Involved, Including Those Who Will Never Be Caught or Convicted**

It would be irresponsible to guess at the total number of offenders who will never be prosecuted. Accordingly, rather than assign a numerical value to the number of offenders who will never be caught and convicted, this Court simply assumes that there will be some offenders who evade detection.

4. **Whether the Defendant Reproduced or Distributed Images of Each Victim**

Defendant distributed Sarah's image on a peer-to-peer macro level file sharing. (Doc. No. 180 at 15.) Defendant did not distribute Vicky's images.[4] (Doc. No. 178 at 4.)

Distribution weighs in favor of a higher restitution award because it reflects a greater role in the overall causal process. Notably, the Federal Sentencing Guidelines assign a higher offense level to distribution than to possession. U.S.S.G. § 2G2.2(b)(3)(F). This court will treat distribution as an aggravating factor.

5. **Whether the Defendant Had Any Connection to the Initial Production of the Images**

There is no evidence of Defendant Romero-Medrano having been a participant in the original production of the victims' images.

---

[4] Counsel for Vicky states that Defendant distributed Vicky's images; however, the Government and Defendant agree that there is no evidence that Defendant distributed the images of Vicky.

Lack of participation in production weighs in favor of a lower restitution award because it reflects a lesser role in the overall causal process. This Court will treat lack of participation in initial production as a mitigating factor.

**6. How Many Images of Each Victim the Defendant Possessed**

Defendant Romero-Medrano had five videos and one image of Vicky. The videos were a combined 94 minutes in length. In four of the videos and the image, the victim's face was visible. (Doc. No. 180 at 12-13.) Defendant Romero-Medrano had three copies of one image of Sarah. (Doc. No. 180 at 14.)

As the prosecution writes, the number of images a defendant possessed "could be meaningful if that number was used to compare with other defendants engaged in similar behavior relating to a particular victim." (Doc. No. 180 at 9.) But that number is not tracked and such a comparison is not possible. (Doc. No. 180 at 9.) Victims' counsel provide some anecdotal information. For example, Vicky's counsel references two offenders for whom courts increased the restitution awards based on the number and nature of the images they possessed. Vicky Letter at 12. One offender had 19 images and the other offender had 51 images and 98 videos. *Id.* Unknown, however, is whether those quantities—or the number of images of each victim possessed by Defendant Romero-Medrano—are typical when there are at least hundreds of other offenders. Moreover, as Vicky's counsel writes, there is nothing benign about any of the child pornography images. *Id.* at 13. Every convicted offender possessed graphic, exploitative images that contributed to the victims' losses.

Without knowing anything about the relevant universe of offenders, this factor is another imponderable. Without better information, this Court will not use the number of images to increase or decrease the restitution award. *See DiLeo*, 58 F.Supp.3d at 246.

7. **Any Other Relevant Facts**

The prosecution does not identify any additional data that would justify escalation of Defendant's restitution amount. (Doc. No. 180 at 10.)

Defendant argues for mitigation by comparing his culpability to offenders who have purportedly stalked the victims or engaged in other direct contact. (Doc. No. 178 at 4.) As stated above, this Court is treating lack of participation in initial production as a mitigating factor.

b. **Synthesis of *Paroline* Factors**

In an ideal world, the Court would know the total universe of offenders and use it to craft a proportional order.[5] By contrast, in this instance, the only numbers the Court has to indicate the universe of offenders are the prior restitution orders, which represent the number of defendants who have been convicted and ordered to pay restitution per victim. The inadequacy of this methodology is glaring. The number of restitution orders that has been entered tells us nothing about the amount of damages each victim will ever collect. Since the offenders have been incarcerated and not all have the ability to pay, it is extremely unlikely that either victim will receive any substantial fraction of her total damages. This Court would strongly prefer the approach taken by Justice Sotomayor in *Paroline*. That is, to follow traditional tort doctrine by making the offenders jointly and severally liable for all damages, and allow the defendants to allocate proportional amounts among themselves.

Given the information available, however, dividing total losses by the known universe of offenders is a reasonable step to take in assessing proportional fault. Like other courts before it,

---

[5] Not only would that be more mathematically ideal, but it would also mean that the possession and distribution of a particular victim's images would come to an end.

this Court uses the number of prior restitution orders as a divisor out of the total economic losses for each victim to determine a rough starting point for the restitution awards.

Dividing Vicky's total economic losses ($4,462,040.96) by the number of restitution orders plus one (to account for the present Defendant, Mr. Romero-Medrano) (905) produces the result $4,930.43.

Dividing Sarah's total economic losses ($2,753,421.77) by the number of restitution orders plus one (to account for the present Defendant, Mr. Romero-Medrano) (384) produces the result $7,170.37.

From those numbers, the Court incorporates the other factors to modify the restitution awards up or down.

Recognizing that there may be a larger universe of offenders that includes future prosecuted defendants and offenders who are never prosecuted, the Court decreases the present numbers. The Court will use a 10 percent reduction to account for the larger universe of offenders.

The Court recognizes that a possessor/distributor should not be the proportional equivalent to an initial abuser in a child pornography case, and again will use a 10 percent reduction to account for this.

Similarly, Defendant has a greater proportional role in Sarah's losses than mere possessors, as he was a distributor. The Court will use a 10 percent increase to account for this.

Taken together, with two 10 percent mitigating reductions for Vicky and no aggravating increases, this Court calculates her restitution award to be 80 percent of the divided amount above. This brings the restitution award for Vicky to $3,944.35.

11

With two 10 percent mitigating reductions for Sarah and one ten percent increase for distribution, this Court calculates her restitution award to be 90 percent of the divided amount above. This brings the restitution award for Sarah to $6,453.33.

### III. CONCLUSION

For the foregoing reasons, the Court orders the Defendant pay restitution to Vicky in the amount of $3,944.35 and to Sarah in the amount of $6,453.33.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, this the 8th day of November, 2017.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE